UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WANDA EDWARDS, as Special Administrator of the Estate of PARISE MERCER, | ) ) ) ) |
| Plaintiff, | ) Case No. 12 cv 5576 |
| v. | ) ) Judge Sharon Johnson Coleman |
| CITY OF CHICAGO AND CHICAGO POLICE OFFICERS TRACY ADLER, Star #5868, and NOEL MORGAN, Star #8714, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants City of Chicago, Noel Morgan, and Tracy Adler move for summary judgment on all counts of Plaintiff Wanda Edwards' seven-count Second Amended Complaint. Edwards brings her claims pursuant to 42 U.S.C § 1983 based on allegations of excessive force for the shooting death of Parise Mercer by Defendant Officers Morgan and Adler. Edwards is Mercer's mother and the Special Administrator of his estate. Defendants assert they are entitled to judgment as a matter of law because Defendant Officers' decisions to fire their weapons at Mercer were reasonable under the circumstances. For the reasons set forth below, the Court denies Defendants' summary judgment motion.

**Background**

Mercer was fatally shot on July 19, 2011 by one of Defendant Officers. Both officers fired at Mercer at different points and it is unclear which of their bullets struck him. Edwards asserts a Section 1983 federal claim for excessive force under the Fourth Amendment (Count I), state law claims under the Illinois Wrongful Death Act and the Illinois Survival Act (Counts II through V) against the City, and respondeat superior and indemnification claims (Counts VI and VII).

Defendants contend they are entitled to summary judgment because the undisputed facts establish that the Defendant Officers reasonably exercised deadly force under federal and state law. They also contend that Edwards has failed to adduce any evidence sufficient to establish a genuine issue of material fact that would support liability under Section 1983 or Illinois state law.

Very few material facts in this case are undisputed. At around 1:00 a.m. on July 19, 2011, a shooting occurred outside of Harold's Chicken Shack restaurant located at 92nd Street and Ashland Avenue, resulting in two men suffering gunshot wounds. Defendant Officers were a half of a block away when the shooting occurred. As they drove toward the scene, Mercer was observed running away and Defendant Officers pursued him in their vehicle. Mercer ran to the backyard of 9204 South Justine where he was shot and killed. He was 5'4" tall and weighed 119 pounds. The fatal bullet entered through the lower left section of Mercer's back and exited through the right side of his neck, grazing his right cheek. Mercer's right hand tested positive for gunshot residue for which, according to a forensic scientist for the Illinois State Police, there are three possible explanations: Mercer either (1) discharged a firearm, (2) was in close proximity of a discharged firearm; or (3) touched an item on which gunshot residue had been deposited. Officer Morgan recovered a handgun in the same yard where Mercer was shot and forensic testing shows that the handgun fired the bullet shells that were recovered at the scene of the shooting at Harold's. A cell phone with blood on it was discovered near Mercer's body and Mercer's hands were covered in blood. The handgun that Officer Morgan recovered had no blood on it and no latent fingerprints could be examined to compare to Mercer's. Whether Mercer was the shooter and whether he pointed a gun at Defendant Officers while running away are disputed material facts.

Defense witness Dante Sawyer testified during his deposition that the shooting occurred as follows: Mercer approached Sawyer and his friends, Bill Wofford, Ashton Richardson, and Michael Powell, after they left Harold's. Mercer asked to use one of their cell phones. He wore a dark-

2

colored hooded sweatshirt ("hoodie") that was either blue or black. Mercer pulled out a handgun from his front sweatshirt pocket and began shooting at Wofford, striking him in his arm. Wofford ran away towards 93rd Street. Sawyer initially ran inside Harold's but went back to retrieve his dropped his car keys. While outside, Sawyer saw Mercer chasing and shooting at Powell. He also saw that Richardson had been shot in his buttocks. Sawyer saw a police car was approaching quickly and Mercer ran away. Mercer was climbing over a fence when Sawyer last saw him. After the shooting, Sawyer transported his injured friends to the hospital. Mercer was never in the restaurant with Sawyer's group that night.

According to Defendant Officers, they were about half a block away from the scene when shots were fired. They saw a Black male in a dark hoodie, whom they later identified as Mercer, firing multiple shots at a crowd of people. Officer Morgan drove quickly towards the intersection in their marked vehicle as Officer Adler sent "emergency, shots fired" via radio transmission. Mercer walked toward Powell and opened fire, following Powell in circles as Powell tried to avoid getting shot. When Defendant Officers got closer, Mercer looked in their direction and ran eastbound on 92nd Street, gun in hand.

Defendant Officers pursued Mercer in their vehicle and when they were about 10 feet away, Mercer turned his upper body and pointed the gun at them. Officer Adler fired once at Mercer but Mercer continued running into the alley. As Defendant Officers chased him in their vehicle, Mercer stopped and again turned his body towards the officers and pointed his gun at them. He turned around and kept running, climbed atop a garbage can and then over a fence into the yard of 9204 South Justine. As Mercer landed, Officer Morgan pulled the car to the fence at an angle. While crouching, Mercer turned a third time and pointed the gun at the officers. From his car, Officer Morgan fired seven shots in rapid succession at Mercer. Officer Morgan stopped shooting when he could no longer see Mercer after he ran into a gangway. While firing, Officer Morgan heard an

3

object hit the concrete walkway in the backyard and when he stopped shooting, Officer Morgan reported to Officer Adler that Mercer had tossed his gun. Officer Morgan got out of the police vehicle and jumped the fence into the yard. He located the gun in a bed of flowers north of the concrete slab. Meanwhile, Officer Adler went looking for Mercer and she called for medical assistance when she found him caught on a fence in the gangway of 9204 South Justine.

Edwards contends that her son Mercer was not the shooter and did not possess a gun. She relies on the testimony of Jacqueline Powers, who worked at Harold's for 14 years at the time of her deposition. Mercer was a regular customer with whom Powers was familiar because he came to the restaurant three to four times per week. On the night of the shooting, a group of three to four young Black men whom Powers had not seen before entered the restaurant. Mercer came in after them, ordered and paid for his regular order of four wings, then left the restaurant, and momentarily returned. Powers testified that when the group of men received their food and left, the environment in the restaurant was "tense." (Dkt. 136, Exh. 1, Jacqueline Powers Deposition, pp. 10:9-15; 12:4-17). Mercer left next and Powers heard gunshots right after Mercer left the restaurant. She heard a car squealing away when the gunshots stopped.

Brothers Akem and Ishmael Spiller also observed the shooting. Akem described the shooter as being about 5'6" or 5'7" and weighing 140 to 150 pounds. (Dkt. 136, Exh. 3, Akem Spiller Deposition, pp. 69:6-9). Ishmael described the shooter has having a dark complexion, wearing a white shirt and having long hair and "a little bit of weight around the stomach." (Dkt. 136, Exh. 4, Ishmael Spiller Deposition, pp. 31:22-24 and 32:1-2). As soon as the Spiller brothers heard shooting, they turned and ran away. Now the Court addresses Defendants' motion for summary judgment.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). The Court considers the entire record and draws all reasonable inferences and resolves factual disputes in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Discussion**

Defendants first claim that there is no genuine issue of material fact that Defendant Officers use of force in firing their weapons and shooting Mercer was objectively reasonable under the circumstances. Claims of excessive force by a law enforcement officer are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Whether an officer's use of force is reasonable is reviewed objectively, and viewed in light of the facts and circumstances before the officer, without regard to an underlying intent or motivation. *Id.* at 397. Thus, the Court must examine the reasonable of the use of force from the perspective of a reasonable officer on the scene, without the benefit of 20/20 hindsight. *Id.* at 396.

As set forth above, nearly every material fact is disputed. The facts of this case will be determined by the trier of fact who will judge the credibility of the witnesses. A jury may find the officers credible and conclude that they saw Mercer shooting at a crowd of people. A jury may also conclude that Mercer was not the shooter. Similarly, while a jury may believe that Mercer brandished a gun at the officers, a jury may also believe that Mercer never had a gun and instead only had a cell phone. A jury might also believe that Mercer fled from gunfire, and not the police.

"At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence." *Abdullahi v. City of*

5

*Madison*, 423 F.3d 763, 773 (7th Cir. 2005). The Court finds that a determination of the events leading to Mercer's death relies on the credibility of witnesses, preventing this Court from concluding as a matter of law that Defendant Officers' use of force was reasonable.

Defendant Officers also contend that even if they were mistaken that Mercer did not have a gun, they are still entitled to qualified immunity because their decisions were reasonable under the circumstances and given the facts within their knowledge. Qualified immunity protects government officials from individual liability for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000). Based on the factual disputes discussed above, the Court will deny summary judgment on this issue as well.

**Conclusion**

Genuine issues of material fact exist regarding whether the Defendant Officers used excessive force when shooting Mercer and therefore, summary judgment is denied.

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED:  April 27, 2015